UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

FILED
JUN 17 2004
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

| | | |
|---|---|---|
| JAY VALENTINE, | § | |
| | § | |
| Plaintiff | § | |
| | § | CIVIL ACTION NO. W04CA160 |
| v. | § | |
| | § | |
| YANTRA CORPORATION, | § | **JURY TRIAL DEMANDED** |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT

COMES NOW, Jay Valentine, Plaintiff, complaining of Yantra Corporation, Defendant, and for cause of action shows the following:

1. Plaintiff is an individual and a resident of Bell County, Texas.

Defendant is a foreign corporation and does not maintain a registered agent for service of process. Consequently, the Secretary of State of Texas is the agent for service of process pursuant to Article 8.10 of the Texas Business Corporation Act and §17.044 of the Texas Civil Practice and Remedies Code. Service can then be forwarded to the corporation's office at 1 Park West, Tewksbury, Massachusetts, 01876. Defendant has been served and has answered herein.

2. Plaintiff was hired as an Account Executive in the Sales Department of Defendant on or about April 9, 2002. Defendant is a software and service business that provides software and professional services for the installation and maintenance of the software to businesses throughout the United States. Plaintiff, as an Account Executive, was responsible for generation business for Defendant in the State of Texas and certain other states. Plaintiff, as well as all other Account Executives in the Company, was given a quota of sales to meet of $4,000,000.00. This quota was to be prorated because it was based upon numbers generated and required as of

January 1, 2002 for a fifteen month timeframe. Since Mr. Valentine joined the Defendant in April, 2002, his quota was to be prorated, which would require a gross amount of $3,200,000.00 in sales for the remainder of the quota time period. In fact, in recognition of the near impossibility to reach that amount of quota for sales, the quota was lowered to $2,000,000.00 for 2004 for all sales representatives.

3. Mr. Valentine was granted a number of incentives as an Account Executive. During the pendancy of his employment, the president of the Defendant promised a "top of the line" BMW to the top sales representative who sold in excess of his quota. Mr. Valentine's quota had been established at a prorated amount of $3,200,000.00. Therefore, to earn the promised vehicle, Mr. Valentine had to generate sales in excess of the $3,2000,000.00 and be the top salesperson.

4. The Defendant amended its sales quota for all of its Account Executives both to create incentives for its representatives and as a more realistic expectation for overall company sales. This change occurred on August 15, 2002. As a result of the amended sales plan, any sale of over $250,000.00 retired $1,000,000.00 of the quota. Mr. Valentine quickly became the most successful sales executive in the company, booking license agreements of $250,000.00 to Cellstar and $6,000,000.00 to SYSCO. The $250,000.00 license counted as $1,000,000.00 toward the Plaintiff's prorated quota and the SYSCO license put Mr. Valentine at well over double his prorated quota. Furthermore, maintenance, service and development fees in excess of $3,300,000.00 were also presumably generated on the SYSCO account pursuant to a statement of work, all of which should have been credited against Plaintiff's quota, but were not. This is based upon a presentation made in April 2003 by Jim Caudill, an employee of Defendant and the technical manager for the SYSCO account. The presentation detailed a license fee of

$6,000,000.00, maintenance fees of $1,008,000.00, services of $1,400,000.00, proof of concept fees of $450,000.00 and development fees of $500,000.00.

5.  The Defendant held its annual sales staff meeting during April, 2003 in Las Vegas, Nevada. At that meeting several of the Account Executives congratulated Mr. Valentine on his apparent winning of a "top of the line" BMW valued in excess of $122,000.00. The Company then made an announcement stating that no one won the vehicle because no sales representative exceeded 200% of his quota. This was the first time any Account Executive had been told of the 200% quota. The other sales representatives at Plaintiff's table were incredulous, upset and angry. Furthermore, even if this moving target were true, which Plaintiff denies, Plaintiff more than exceeded 200% of his quota.

6.  Plaintiff's supervisor was originally Tony Arona. As a result of a corporate reorganization that occurred when the compensation plan was amended, Don Filipovich became Plaintiff's supervisor. After the SYSCO deal closed, Plaintiff expected to be an integral part of the team to service the account and maintain professional relationships with the SYSCO executives with whom he had been dealing. However, Filipovich removed Plaintiff from the account claiming that SYSCO stated it had problems with Valentine. This was untrue. Furthermore, pursuant to the Defendant's compensation plan, changes, including territory, had to be approved in writing by Defendant's Senior Vice-President of Sales, Jeff Murphy. Plaintiff never received written notice of any change. By removing Plaintiff from the SYSCO account, Defendant failed to pay Plaintiff commissions earned on several hundred thousand dollars of services rendered by Defendant for SYSCO.

7.  Plaintiff sought to file a grievance with the company to protest his loss of the BMW and his removal from the SYSCO account. Mr. Filipovich threatened Plaintiff with

termination if he filed a grievance. Plaintiff filed the grievance and Filipovich stated to Plaintiff that since he could not work in his region, he was out of the company. As a result of his termination, Plaintiff forfeited a $1,000,000.00 pending deal at Cellstar and other commissions to be earned from SYSCO for additional license fees and professional services fees.

## CAUSES OF ACTION

8. Plaintiff incorporates paragraphs 1 through 7 for all purposes.

The facts as plead demonstrate a breach of contract for which Plaintiff seeks damages. All conditions precedent to Plaintiff's right of recovery have been met.

9. Plaintiff incorporates paragraphs 1 through 7 for all purposes.

Plaintiff further seeks actual and punitive damages for fraud. He was induced to enter into employment with Defendant for which Defendant made material misrepresentations of material facts that Plaintiff relied upon to his detriment. The Defendant misled Mr. Valentine concerning quota amounts and compensation.

10. Plaintiff incorporates paragraphs 1 through 7 for all purposes.

Plaintiff further alleges that he has suffered damages by the Defendant's acts of negligent misrepresentation. Representations were made in the course of business in which Defendant supplied false information concerning the quota necessary to obtain the BMW and the commissions earned by Plaintiff in which the Defendant failed to exercise reasonable care in communicating this information. Plaintiff justifiably relied upon these misrepresentations and suffered damages accordingly.

11. Plaintiff incorporates paragraphs 1 through 7 for all purposes.

4

Defendant's actions constitute a breach of fiduciary duty owed to Plaintiff by virtue of their employer-employee relationship. Consequently, Plaintiff seeks actual and punitive damages for the breach of fiduciary duties.

12. Defendant's actions were done knowingly and willingly and as a result, Plaintiff seeks the imposition of punitive damages.

13. Mr. Valentine's compensation was based upon salary and commission. His commission income as calculated by the Defendant was $430,000.00. Mr. Valentine's own calculation, based upon the correct quota and the timeliness of the booking of the Cellstar and Sysco license agreements, as well as the quota retirement made on the services portion of the SYSCO contract, shows commissions owed of $810,000.00, a difference of $380,000.00. Additionally, a 2003 top of the line BMW has a value of at least $122,180.00, all of which Plaintiff seeks as damages.

14. Plaintiff seeks recovery of his attorney's fees for the prosecution of this action pursuant to Section 38.001 et. seq. of the Texas Civil Practice and Remedies Code.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Jay Valentine requests that Defendant Yantra Corporation be cited to appear and answer herein and that upon final trial hereof, he be granted his actual and punitive damages as plead, attorney's fees, costs of Court and prejudgment and postjudgment interest at the maximum lawful rates and all other relief to which Plaintiff may be justly entitled.

5

                        Respectfully submitted,

By: _____
Michael S. Burg
ATTORNEY AT LAW
State Bar No. 03375500
2008 West McKinney
Houston, Texas 77019
(713) 627-8885 (Telephone)
(713) 627-0780 (Telecopy)

**ATTORNEY FOR PLAINTIFF,
JAY VALENTINE**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was delivered to the attorney of record in accordance with the Federal Rules of Civil Procedure on June 17th, 2004, as follows via U.S. Mail, First Class, postage pre-paid:

Scott Cole
Texas State Bar No. 00790481
Joel Thollander
Texas State Bar No. 24033384
**McKool Smith, P.C.**
300 West 6th Street, Suite 1700
Austin, Texas 78701
(512) 692-8700 (Telephone)
(512) 692-8744 (Telecopy)

**ATTORNEYS FOR DEFENDANT,
YANTRA CORPORATION**

_____
Michael S. Burg

6